IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | 8:10CR169 |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | MEMORANDUM AND ORDER |
| THOMAS J. HERINK, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the defendant's objection, Filing No. 50, to the Findings and Recommendation ("F&R") of the magistrate judge. *See* Filing No. 46, F&R; Filing No. 49, Transcript (Tr.) at 113-124. The magistrate judge recommended denial of the defendant's motion, Filing No. 36, to suppress statements he made during an interrogation. Filing No. 46, F&R at 2. The defendant has been charged with wire fraud, bank fraud, conspiracy to commit fraud and making a false statement to a bank, in violation of 18 U.S.C. §§ 2, 1343, 1344, and 1014. Filing No. 1, Indictment.

Pursuant to 28 U.S.C. § 636(b)(1)(A), the court has conducted a de novo determination of those portions of the F&R to which the defendant objects. *United States v. Lothridge*, 324 F.3d 599, 600-01 (8th Cir. 2003). The court has reviewed the record including the transcript of the hearing on the motion to suppress on January 4, 2011, and the exhibits. *See* Filing No. 49, Tr.; 43 Exhibit List.

I. BACKGROUND

The court adopts the factual findings of the magistrate judge. The facts are set forth in the transcript of the hearing and will be repeated only as necessary to the court's opinion. *See* Filing No. 49, Tr. at 113-24. Briefly, the defendant was interrogated by three FBI

agents at the FBI headquarters in Omaha, Nebraska, for between one and a half to three hours on May 28, 2009. *Id.* at 114. Federal Bureau of Investigation Agent Michael Bailey testified that he had approached the defendant as he was leaving his place of employment the previous day and stated that he had "a couple of questions about Golf Services Group" and wanted to talk. He served a grand jury subpoena on the defendant and also gave the defendant his business card, telling the defendant to call when he had an opportunity to meet and talk. *Id.* at 13, 50. He did not recall mentioning Marty Ostronic, Herink's business partner, at that time. *Id.* at 50. Herink, on the other hand, testified that Agent Bailey told him that he had questions about Golf Services Group and Marty Ostronic. *Id.* at 62. Herink testified that he was aware that Ostronic had legal problems in the past. *Id.*

Agent Bailey also testified that Herink was the target of the investigation and conceded that Herink was never told he was a target. *Id.* at 42, 46, 50. He stated that he did not tell Herink he was the target of the investigation because "we didn't think he would come in for an interview if we told him that." *Id.* at 42. He also testified that the investigation was focused on Herink and had never been focused on Ostronic. *Id.* at 46, 49.

Agent Bailey testified that the defendant called him on May 28th and set up a meeting for that afternoon. *Id.* at 15. He told the defendant that he was free to leave at any point. *Id.* at 34. The interview was conducted in a 14-foot by 16-foot room with no windows. *Id.* at 22, 30. There were two doors to the room, but one could not be accessed without a badge. *Id.* at 53-54. Three FBI agents were present in the room. *Id.* at 27. Ex. 1. Two were armed and were wearing suits or sport coats. *Id.* at 27-28. Agent Bailey

testified that the interview lasted approximately one and a half hours. *Id.* at 38. Ostronic's name was mentioned during the initial questioning. *Id.* at 52. Bailey stated he did most of the questioning, then an FBI financial analyst questioned Herink about documents, including Quickbooks entries, financial statements and checks. *Id.* at 39. The other FBI agent also asked some questions. *Id.* at 55. Bailey did not recall Herink asking if he needed an attorney. *Id.* at 39-40. There was no break taken during the interview. *Id.* at 51. Herink was not advised of his *Miranda* rights. *Id.* at 57. Herink left at the end of the interview. *Id.*

Herink testified that he had no knowledge of the investigation prior to May 27, 2009, when he was approached by Agent Bailey in the parking lot of his place of employment. *Id.* at 64. Bailey handed Herink a "grand jury paper," but did not provide any explanation. *Id.* at 65. Herink testified that he asked Agent Bailey on May 27, 2009, whether he would need a lawyer and Agent Bailey told him he could have one if he wanted one, but did not need one. *Id.* at 67. He testified that Agent Bailey had a similar response when Herink made the same inquiry the following day. *Id.* at 78. Herink stated that he thought the interview on May 28, 2009, lasted three hours, rather than an hour and a half. *Id.* at 76. He stated that an agent's chair blocked egress from one of the doors to the interview room and that he did not feel he could exit. *Id.* at 76-77. He conceded that he was told he was free to leave, but did not think he could leave until the agents were finished questioning. *Id.* at 79. He stated that the questioning became more intense and aggressive as time went on and that he felt intimidated. *Id.* at 85, 93. Herink also testified that if he had known he was the target of an investigation, he would have retained a lawyer. *Id.* at 67.

3

He stated that he was not informed he was a target until "way at the end of the interview" on May 28, 2009.

The magistrate judge found that the interview was not a custodial interrogation, that the defendant was there of his own free will and volition, and that no *Miranda* warning was required. *Id.* at 117. He further found that the defendant's statements were voluntary. *Id.* at 118. He credited the testimony of Agent Bailey over that of Herink, finding Herink's testimony was self-serving. *Id.* at 123.

II. DISCUSSION

A. Law

Under *Miranda v. Arizona,* 384 U.S. 436, 444 (1966)*,* an individual must be read certain warnings before being subject to a "custodial interrogation." *United States v. Johnson*, 619 F.3d 910, 918 (8th Cir. 2010). If an individual is not subjected to custodial interrogation, no warning need be given. *Id.* at 919. A custodial interrogation is defined as questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom in any significant way. *Id.* The ultimate inquiry is whether there was a formal arrest, or a restraint on freedom of movement of the degree associated with a formal arrest. *Id.* To determine if a person is in custody, a court must first consider the totality of the circumstances and then decide whether a reasonable person in the defendant's position would consider his freedom of movement restricted to the degree associated with formal arrest. *Id*.; *Thompson v. Keohane*, 516 U.S. 99, 112 (1995) (stating that "[t]wo discrete inquiries are essential to the determination: first, what were the circumstances surrounding the interrogation; and second, given those

circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave.")  The determination is based on "the objective facts, not [the defendant's] subjective views." *Johnson,* 619 F.3d 919.

In the Eighth Circuit, several nonexclusive factors are relevant to custody, including: (1) whether the officers informed the defendant he was free to leave and not required to answer any questions; (2) whether the defendant possessed unrestrained freedom of movement during questioning; (3) whether the defendant initiated the contact with the officers or voluntarily acquiesced to official requests to respond to questions; (4) whether the officers employed strong arm tactics or deceptive stratagems during questioning; (5) whether "the atmosphere was police dominated;" and (6) whether the officers arrested the defendant at the end of the interview.  *Id.; see also United States v. Griffin,* 922 F.2d 1343 (8th Cir. 1990); *United States v. Czichray,* 378 F.3d 822, 827-28 (8th Cir. 2004).  "'The most obvious and effective means of demonstrating that a suspect has not been taken into custody . . . is for police to inform the suspect that an arrest is not being made and that the suspect may terminate the interview at will.'" *United States v. New*, 491 F.3d 369, 373-74 (8th Cir. 2007) (quoting *Griffin*, 922 F2d at 1349); *United States v. Ollie,* 442 F.3d 1135, 1138 (8th Cir. 2006) (stating that an explicit assertion that the person may end the encounter "provides an individual with a clear understanding of his or her rights and generally removes any custodial trappings from the questioning").  An interview is not custodial simply because it occurs at the station house.  *Ollie,* 442 F.3d at 1139.

The prosecution must prove at least by a preponderance of the evidence that a confession is voluntary. *Lego v. Twomey*, 404 U.S. 477, 489 (1972).  In a noncustodial

situation, "'[t]he test for determining the voluntariness of a confession is whether the police extracted the confession by threats, violence, or direct or implied promises, such that the defendant's will was overborne and his capacity for self-determination critically impaired." *United States v. Estey*, 595 F.3d 836, 839 (8th Cir. 2010) (quoting *United States v. Gannon*, 531 F.3d 657, 661 (8th Cir. 2008). Courts examine the totality of the circumstances in making this assessment. *Id.* The two factors that must be considered in applying the "overborne will" doctrine are "the conduct of the law enforcement officials and the capacity of the suspect to resist pressure to confess." *United States v. Meirovitz*, 918 F.2d 1376, 1379 (8th Cir. 1990); *Colorado v. Connelly*, 479 U.S. 157, 168-70 (1986)). More specifically, courts also consider, "'among other things, the degree of police coercion, the length of the interrogation, its location, its continuity, and the defendant's maturity, education, physical condition, and mental condition.'" *United States v. Sanchez*, 614 F.3d 876, 883 (8th Cir. 2010) (quoting *Sheets v. Butera*, 389 F.3d 772, 779 (8th Cir.2004)).

Obviously, interrogation of a suspect will involve some pressure because its purpose is to elicit a confession. *Sanchez*, 614 F.3d at 883-84. "'[T]here is nothing inherently wrong with efforts to create a favorable climate for confession.'" *Id.* at 884 (quoting *United States v. Santos-Garcia*, 313 F.3d 1073, 1079 (8th Cir.2002). "Numerous cases have held that questioning tactics such as a raised voice, deception, or a sympathetic attitude on the part of the interrogator will not render a confession involuntary unless the overall impact of the interrogation caused the defendant's will to be overborne." *Id.* With respect to the length of an interrogation, an interview lasting approximately five and a half hours is not of sufficient length to render a confession involuntary per se. *United*

6

*States v. Dehghani*, 550 F.3d 716, 721 (8th Cir. 2008); *see also Simmons v. Bowersox*, 235 F.3d 1124, 1133 (8th Cir.2001) (finding a period of interrogation of approximately two hours was not "particularly lengthy"); *Jenner v. Smith*, 982 F.2d 329, 334 (8th Cir.1993) (stating that "[t]he fact that the questioning extended for six or seven hours is not per se unconstitutionally coercive.").

###### B.  Analysis

The court agrees with the magistrate judge's assessment that Herink was not in custody during the interview.  The defendant acquiesed to the agent's request to answer some questions.  He initiated the contact with law enforcement on the day of the interview and transported himself of his own volition to FBI headquarters.  Most importantly, he concedes that he was told he was free to leave at the beginning of the interview.  At the conclusion of the interview, he was allowed to leave and was not arrested.

The court also agrees with the magistrate judge's conclusion that his statements during the interview were voluntary.  He had been told that he could bring an attorney to the interview.  The magistrate judge credited the testimony of the FBI agent over that of the defendant, but even if the defendant's testimony were fully credited, the court finds the conduct of the police officers did not rise to a level of coercion sufficient to impair the defendant's will and capacity for self-determination.  As noted, the defendant was told he was not under arrest, was free to leave, and could have had an attorney present.  There is no dispute that he was not told he was a target of the investigation, but this tactic does not rise to a level of coercion that would render his statements involuntary.  Even if the court were to assume that the defendant's business partner had been mentioned in connection with the interview, that statement does not equate to the sort of threats,

violence, direct or implied promises, or deceptive stratagems that have been held to result in a defendant's will being overborne. The length of the interrogation, even at three hours, is not excessive. The court finds the law enforcement officers' conduct is not so coercive as to deprive the defendant of his ability to make an unconstrained decision to talk to the agents. Also, Herink is a college-educated successful businessman. There is no evidence that he suffers from any mental or physical conditions that would affect his ability to resist pressure. There is no evidence that any threats, misrepresentations or promises were made. Accordingly,

IT IS ORDERED that:

1. The defendant's objection to the F&R of the magistrate judge (Filing No. 50) is overruled.

2. The F&R of the magistrate judge (Filing No. 46) is adopted in its entirety.

3. Defendant's motion to suppress (Filing No. 36) is denied.

DATED this 15th day of February, 2011.

BY THE COURT:


s/Joseph F. Bataillon
Chief District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.